IN RE APPEALS OF NORTHERN TELECOM

[112 N.C. App. 215 (1993)]

IN THE MATTER OF THE APPEALS OF NORTHERN TELECOM, INC.
FROM ORDERS OF THE DURHAM COUNTY BOARD OF COMMISSIONERS
CONCERNING ASSESSMENTS FOR TAX YEARS 1984-1991

No. 9210PTC245

(Filed 5 October 1993)

**Taxation § 25.10 (NCI3d)— Property Tax Commission—order signed by Chairman after expiration of term—void**

 An order of the Property Tax Commission finding the County's assessment of NTI's business personal property null and void which was entered by Chairman Pinna on 4 November 1991 was itself null and void because Pinna's successor was appointed to the Commission by Governor Martin on 17 October and signed an oath of affirmation for the position on 1 November; thus, Pinna was no longer a member of the Commission when he entered the order. Although NTI contended that entry was merely a ministerial act and that the order was valid and binding when approved by a majority of Commissioners in September, entry of this order was necessary for it to be final and binding in light of the fact that no decision was ever rendered in this action prior to entry of the order. Finally, although the Commission entered an order on 4 February 1992 finding that the 4 November 1991 order was "a true and proper Order setting forth the findings and conclusions of a majority of the Members of the Commission who were present at the hearing held 13 June 1991," the statutory scheme which grants the Commission the authority to enter such orders does not give the Commission the authority to determine whether a previous order of the Commission is valid and binding.

**Am Jur 2d, Public Officers and Employees § 304.**

 Appeal by Durham County and cross-appeal by Northern Telecom, Inc. from order entered 4 November 1991 by Chairman William P. Pinna of the North Carolina Property Tax Commission. Heard in the Court of Appeals 16 March 1993.

 On 20 November 1989, 5 June 1990, and 17 August 1990, Durham County (the "County") issued discovery tax assessments against Northern Telecom, Inc. ("NTI") for its business personal property located in Durham County on the ground that NTI had substantially

under-listed the amount and value of this property. In the 20 November 1989 assessment, the County assigned a value of $135,000,000 to NTI's business personal property for 1984. In the 5 June 1990 assessment, the County assigned NTI's property a value of $1,179,422,917 for the 1985-1990 tax years. These valuations were reduced by the 17 August 1990 assessment to a total value of $402,200,894 for the 1984-1990 tax years.

NTI appealed the tax assessment valuation to the County Board of Commissioners (the "Board"), which appeal was heard on 22 October 1990. On 23 October 1990, the Board upheld "[t]he assessment of the Durham County Assessor's Office, as well as the appropriate penalties" and informed NTI the total value assigned to the property for the 1984-1990 tax years was $400,729,094, which amount reflected an "adjustment made for 1987 for inventory in transit." On 20 November 1990, NTI filed an appeal from this assessment with the North Carolina Property Tax Commission (the "Commission").

In addition, on 27 December 1990, NTI appealed these assessments to the Board, and on 29 January 1991, the County officially notified NTI of the Board's decision to deny this appeal. On 27 February 1991, NTI filed an appeal of the Board's decision with the Property Tax Commission. In both appeals to the Commission, NTI excepted to the County's valuation of NTI's business personal property.

On 24 May 1991, the Commission entered a final decision in an unrelated case in which it held a discovery assessment null and void based on its finding that a contingency fee contract between the county in that case and an auditor was void as against public policy. On 31 May 1991, the County in the present case filed a motion *in limine* to prohibit NTI from presenting any evidence regarding a contingency fee auditing contract between the County and Tax Equity Consultants, Inc. ("TEC"). On this same day, the County invalidated this contract. On 5 June 1991, NTI filed a motion with the Commission to declare the discovery assessment void as violating public policy through the use of a contingency fee contract in the auditing process.

These two motions were heard by the Commission on 13 June 1991. On 4 November 1991, Chairman William P. Pinna entered an order for the Commission concluding as a matter of law that the contract between the County and TEC was void as against

**IN RE APPEALS OF NORTHERN TELECOM**

[112 N.C. App. 215 (1993)]

public policy and that the County's discovery assessment was a direct result of this contract. Based on these conclusions, the Commission held the discovery tax assessments for 1984 through 1991 null and void and prohibited the County from using any information acquired through the contingency fee contract in future assessments. Further, the Commission held that its order does not preclude the County from initiating a proper discovery under N.C. Gen. Stat. § 105-312. From this order, the County appeals, and NTI cross-appeals.

*Robinson Maready Lawing & Comerford, by William F. Maready and Michael L. Robinson, for appellant/cross-appellee the County of Durham.*

*Maupin Taylor Ellis & Adams, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman and Linda F. Nelson, for appellee/cross-appellant Northern Telecom, Inc.*

ORR, Judge.

This appeal involves the tax assessment for business personal property owned by Northern Telecom, Inc. in Durham County. The County appeals from the order of the Property Tax Commission finding its discovery tax assessment null and void based on a contingency fee contract between the County and an outside auditing firm, TEC. NTI cross-appeals the Commission's failure to consider NTI's constitutional arguments that relate to the contingency fee contract.

Before we address these arguments, however, we must first address the County's contention that the order signed by Chairman Pinna is null and void based on the ground that at the time of the issuance of the order, three individuals signing the order were not lawful members of the Commission.

On 13 June 1991, this action was heard before the Property Tax Commission. At this time, the five members constituting the Commission were Chairman William P. Pinna, Vice-Chairman James C. Spencer, Jr., Oliver W. Alphin, Clarence E. Leatherman, and John A Cocklereece. On 4 November 1991, Chairman William Pinna entered the order for the majority holding that the tax assessment was void, and Vice-Chairman Spencer and Leatherman dissented. By 4 November 1991, however, the terms of Leathermen, Spencer,

and Pinna as Commissioners for the Tax Commission had expired, and Pinna's successor had been appointed.

Thus, the issue on appeal is whether the order entered on 4 November 1991 by Chairman Pinna after Pinna's term had expired as a Commissioner on the Property Tax Commission and Pinna's successor to the Commission had been appointed is valid and binding. We hold that the order is not valid based on our conclusion that Chairman Pinna did not have the authority to enter an order after the expiration of his term on the Commission.

The Property Tax Commission is created by N.C. Gen. Stat. § 105-288(a) (1992) which states:

> (a) Creation and Membership.—The Property Tax Commission is created. It consists of five members, three of whom are appointed by the Governor and two of whom are appointed by the General Assembly. . . . The terms of the members appointed by the Governor and of the member appointed upon the recommendation of the President Pro Tempore of the Senate are for four years. Of the members appointed for four-year terms, two expire on June 30 of each odd-numbered year. The term of the member appointed upon the recommendation of the Speaker of the House of Representatives is for two years and it expires on June 30 of each odd-numbered year. . . .

Further, under this statute, the Property Tax Commission sits as the "State Board of Equalization and Review for the valuation and taxation of property in the State." N.C. Gen. Stat. § 105-288(b) (1992).

Appeals to the Commission as the State Board of Equalization and Review are governed by N.C. Gen. Stat. § 105-290 (1992) which states:

> (b) . . . The Property Tax Commission shall hear and decide appeals from decisions concerning the listing, appraisal, or assessment of property made by county boards of equalization and review and boards of county commissioners. Any property owner of the county may except to an order of the county board of equalization and review or the board of county commissioners concerning the listing, appraisal, or assessment of property and appeal the order to the Property Tax Commission.
>
> . . . .

IN RE APPEALS OF NORTHERN TELECOM

[112 N.C. App. 215 (1993)]

(3) On the basis of the findings of fact and conclusions of law made after any hearing provided for by this subsection (b), the Property Tax Commission *shall enter an order* (incorporating the findings and conclusions) reducing, increasing, or confirming the valuation or valuations appealed or listing or removing from the tax lists the property whose listing has been appealed. A certified copy of the order shall be delivered to the appellant and to the clerk of the board of commissioners of the county from which the appeal was taken, and the abstracts and tax records of the county shall be corrected to reflect the Commission's order.

N.C. Gen. Stat. § 105-290(b)(3) (1992) (emphasis added).

Thus, under these statutes, the Property Tax Commission has the authority to sit as a board of equalization to hear appeals from valuation and taxation of property in North Carolina, to make findings of fact and conclusions in these appeals, and to enter orders "reducing, increasing, or confirming the valuation or valuations appealed or listing or removing from the tax lists the property whose listing has been appealed" consistent with these findings and conclusions.

In the present case, on 4 November 1991, Chairman Pinna entered the order for the Commission finding the County's assessment of NTI's business personal property null and void. Subsequently, by letter dated 17 October 1991, Pinna's successor, James Vosburgh, was appointed to the Commission by Governor Martin, and on 1 November 1991 Vosburgh signed an oath of affirmation for this position. Thus, when Pinna entered the Commission's order, he was no longer a member of the Commission. Because the authority to enter this order comes from being appointed as a member of the Property Tax Commission pursuant to the statutes set out previously, Pinna's authority to enter the order ended when his term expired. The order entered by Pinna is, therefore, null and void and of no legal effect. *See Capital Outdoor Advertising, Inc. v. City of Raleigh*, 109 N.C. App. 399, 400-01, 427 S.E.2d 154, 155, *disc. review allowed, motion to dismiss denied*, 333 N.C. 789, 430 S.E.2d 424 (1993) (except by consent of the parties, judgment entered by a superior court judge out of session, out of term, and out of the county and judicial district where the hearing was held is " 'null and void and of no legal effect.' "); *See also Nationwide*

*Mutual Ins. Co. v. Anderson*, 111 N.C. App. 248, 431 S.E.2d 552 (1993).

NTI argues, however, that because entry of the order was "merely a ministerial act", the Commission's order was valid and binding when a majority of the Commissioners approved the order at their meeting in September. We disagree. The record is void of any evidence that the Commission rendered its decision by notifying the parties until its order was actually signed and entered.

> Although as between the parties a duly rendered judgment may be valid and effective without entry, and its enforcement does not always depend on its entry, the statutes generally require judgments to be entered and for many purposes they are not complete, perfect, and effective until this is done.

> As a general rule, the decisions of all courts must be preserved in writing in some record provided for that purpose. Where a statute so requires, judgments should be entered, and for many purposes a judgment is not complete, perfect, and effective until it has been duly entered. Thus it has been broadly held that judgments take effect only from the date of entry, and that there is no judgment until it is entered of record.

49 C.J.S. § 107 (footnotes omitted).

In the present case, the parties were not notified of the Commission's decision until the Commission's order was entered on 4 November 1991. There is no evidence to show that a Commissioner could not change his vote before the final entry of the order. In fact, two Commissioners were preparing a dissent, which dissent could have persuaded any of the other Commissioners in the majority to change their vote. Further, in order to appeal the Commission's order to this Court, the order had to have been entered. *See Searles v. Searles*, 100 N.C. App. 723, 725, 398 S.E.2d 55, 56 (1990) ("entry of judgment is jurisdictional[, and] this Court is without authority to entertain an appeal where there has been no entry of judgment."). Thus, we conclude that entry of this order was necessary for it to be final and binding, in light of the fact that no decision was ever rendered in this action prior to entry of the order. *See Fitch v. Fitch*, 26 N.C. App. 570, 216 S.E.2d

IN RE APPEALS OF NORTHERN TELECOM

[112 N.C. App. 215 (1993)]

734, *cert. denied*, 288 N.C. 240, 217 S.E.2d 679 (1975). NTI's argument is therefore without merit.

We also note that NTI refers to another order of the Commission as evidence that the 4 November 1991 order was valid and binding. On 4 February 1992, the Commission entered an order finding that the 4 November 1991 order of the Commission was "a true and proper Order setting forth the findings and conclusions of a majority of the Members of the Commission who were present at the hearing held 13 June 1991." This order does not, however, persuade us to alter our decision.

As previously stated, the Property Tax Commission has the authority to sit as a board of equalization and review to hear appeals from valuation and taxation of property in North Carolina, to make findings of fact and conclusions in these appeals, and to enter orders "reducing, increasing, or confirming the valuation or valuations appealed or listing or removing from the tax lists the property whose listing has been appealed" consistent with these findings and conclusions. *See* N.C. Gen. Stat. § 105-290. The statutory scheme which grants the Commission the authority to enter such orders does not, however, give the Commission the authority to determine whether a previous order of the Commission is valid and binding. Thus, the 4 February 1992 decision of the Commission does not alter our conclusion that the 4 November 1991 order is null and void.

Based on our holding that the order is null and void, we need not address the remaining assignments of error arising out of this order. Accordingly, we vacate the order of the Commission.

Vacated.

Judges WELLS and MARTIN concur.